Good morning, Your Honors, and may it please the Court. My name is Alexander Talbis, and I represent the plaintiffs' appellants, Handsome, Inc., Todd Casella, and Mona Casella, the latter of two who are in this courtroom here today. The district judge erred in this case by granting summary judgment because a reasonable jury could conclude that the Town of Monroe's officials violated these property owners' property rights as well as their First and Fourteenth Amendment rights when they took repeated, sustained action to shut down their business despite having no factual or legal grounds to do so under Connecticut law. In 2003, the property owners sought a special permit in the Town of Monroe, which in the zone where this property is located, is required to undertake any use of the property. You need a special permit. For five years, they commenced work on the property, and these permits are issued in five-year increments. At the five years elapsed, they sought a routine extension of that permit. The Town, in denying that extension, relied on grounds that a superior court judge in Connecticut found were not appropriate legal grounds to deny a mere extension of a permit. So they got a remedy. Well, they got a remedy all right. They got remanded back. I would argue that the entire course of conduct was a continuing course of conduct, so that although — Yes. So we don't concede that.  On the remand from the denial of the extension, the court — the commission, the defendants, did two things which were ultra-virous and so arbitrary that they violated the due process rights of my clients. The first thing, as you alluded to, Your Honor, was the conditions, which Judge Radcliffe ruled, in his opinion, was an — those were unlawful conditions, which were tainted by an illegal executive session where the defendants illegally, under Connecticut law, met in private, did not give the plaintiffs an opportunity to participate, and then came out and imposed these illegal conditions. That was ultra-virous. But additionally, they retroactively backdated the approval of the extension. So essentially, three years into fighting for a five-year extension, they said, we'll give you your extension, but only for two more years since the three years when you've been fighting have elapsed. That was not only ultra-virous, but it violated directly applicable binding precedent. It violated all the constitutional basics that was set forth by Connecticut law to arbitrarily restrict defense meetings and presentation of state examples. The court contest documents, although they didn't look directly at the Superior Court, children have been removed from the Superior Court right away after the end of the extension. The Supreme Court did not receive relief, Your Honor, because as the Connecticut Supreme Court Justice Palmer noted in his dissent, Judge Radcliffe's ruling was vacated on the basis of a procedural error that was not only an error in Justice Palmer's view under Connecticut law, but was also as a result of their lawyers in State court not properly briefing the standing issue in the second appeal. So our role… The balances we have under the due process clause is that you have to show government action that's not just arbitrary and capricious in a way that would be remedied by normal legal procedures, but so outrageously arbitrary that it violates the due process clause. The fact that you had relief from the courts, but the attorneys waived an argument that might have secured that relief doesn't seem to have any effect on whether the town's activity was outrageously arbitrary or merely arbitrary. Well, this Court, in cases like Brady, Siniscate, Walls, and Sullivan, has found that where the ultra-virous conduct was not merely an abuse of discretion, where they had a legitimate means of discretion, but they perhaps misapplied the law or made a mistake of law, but where the government officials who are depriving the property owners of their property interests have no discretion, as the State court has found, in the case of Brady, Siniscate, Walls, and Sullivan. So the courts ruled in Hansen I and Hansen II, but nonetheless act outside of their legal authority and arbitrarily that a reasonable jury, here on summary judgment, could conclude… But it's outrageously arbitrary. Yes. Not merely arbitrary. Conscious, shockingly. There must be some cases where a government actor, you know, acts in violation of their discretion, but we don't say it violates the due process clause, because there is a distinction between arbitrary and capricious and outrageously. And I get that that's kind of an amorphous standard, but that's the one we have to apply, right? I believe the word is the conscious, shockingly standard. Conscious, shockingly. And that word is used in other contexts in this circuit. For example, in the Kingsley line of cases regarding an objective violation of a detainee's right against excessive force. That has to be conscious, shocking. And yet this Court applies factors under Graham against, you know, under Graham to determine reasonableness, and when it's unreasonable and excessive, it can be conscious, shocking. The most unreasonable action they take is to backdate the extension, right? It seems a little, not a little, it seems unreasonable for the town, when they've been fighting for a five-year extension, to cut off three years of it by backdating it. But the question as to whether that's so outrageous as to shock the conscience, I mean, under Connecticut law, would they be entitled to another renewal anyway? Is that the implication of Hanson II? Like, they're not deprived of their rights to develop it, so what the town might have been thinking is we're going to backdate this extension so they have to come back to us in two years for another extension. And that will, you know, speed up what we think is a slow process of development of the property. So we don't have the benefit of what they actually were thinking because they illegally kept that secret. But if, let's say that their proposal was simply to make it quicker so they have to work faster, they have no legal authority to do that under Connecticut law. This is a permit. This is not a contract with the town to complete work at their property. This is their property. They're simply asking permission to use their property. So when you are entitled to use your property under the law, can a town simply say, no, you're not, because we want you to work faster? You're entitled to use your property to some degree, but you need a special exemption permit, right? Basically, your argument boils down to an argument against the conditions on the special permit, right? You're opposed to those conditions because clearly the town could impose those conditions, but there's no reason why they couldn't impose the conditions that they did. And Handsome 2, Judge Radcliffe ruled that they did not have authority to impose those conditions under Connecticut law. Right. Well, the Connecticut Superior Court says that they couldn't add new conditions that wasn't added at the beginning unless there was a change in the legal landscape or something. But they could have had more conditions at the outset, right? In 2008, when they had initially granted the permit. Correct. So if that's true, then the attempt to add additional conditions, while the Connecticut court said it was unlawful, I guess my question is, why should I conclude that it's conscience shocking if they did it at the wrong time, but it's something that they could have done if they did it earlier? So it's whether a reasonable juror could conclude. And what I would add is this. I agree that that's the standard. Okay. So could a reason — why would a reasonable juror conclude that it's conscience shocking if it's just an attempt to add conditions that they could have added in 2008 and they tried to add later so they couldn't do it? But does it shock the conscience that they tried? Two reasons. So the first reason is because at the second hearing, they did all of this in an illegal executive session where the plaintiffs, which they were entitled to in 2008 at a full hearing where they had the right to do all — to bring their evidence, et cetera, they would have been able to address all of this. In 2011, they do this in the dark, come out as a superior court judge finds that these conditions are tainted by the illegal executive session. But additionally, even if we agree for the sake of argument that the 2008 denial of the extension completely, which I would argue is even more conscience shocking, is outside of the statute of limitations, that does not take it outside of the context of this claim in laying the foundation for a continuing course of conduct where the town officials were dead set on depriving the plaintiffs the use of their property. And so — But you actually say that that — so just in terms of a continuing course of conduct argument, I mean, you say that actually it was clear that the town was dead set against your clients in 2008 because they were reacting to the affordable housing proposal, right? Yes. So the later event didn't, you know, add anything to whether you would have had a claim in 2008, right? I don't think I understand your question. I mean, I sort of get the idea that maybe the initial denial of the permit, it wouldn't have been obvious to your client at that time that the town was dead set against them when they simply denied the permit. And maybe that would be revealed when they kind of unreasonably acted after the remand from the Connecticut Superior Court. But that's not your argument, right? Because you think it was clear from the time of the affordable housing proposal that the town was dead set against your clients, right? I don't think that — Well, is it clear? Is it — it's certainly less clear than it is now. I suppose that if it were — the point being made that if it were so clear that they were dead set, why didn't they sue at that point? Or, you know, why didn't they sue just based upon the extension — the denial of the extension? But at that point, they did have State remedies, and they were pursuing them. And it was — it was really the town's resistance, even in the face of having judicial rulings against them, saying that they're acting illegally, that made it so clear that a reasonable juror — again, it doesn't have to be that clear. It has to be clear enough that a reasonable jury could find that their actions were based upon reasons that are conscious, shockingly arbitrary, because they're not based on the law and they're not based on the facts. They're based upon other considerations that are not material to whether these property owners should be allowed to use their property within the zoning rules and regulations of the town as the property was zoned. So if a town believes that you're not — that, as they said in some of their zoning commission hearings that the district judge appeared to credit, you know, they're not working fast enough, they're just crushing rocks, the remedy for that is to bring a zoning enforcement action. It's not to deny the plaintiffs their permit on their property, which is compliant with the zoning regulations, compliant with the conditions that were imposed in 2003. They can't impose new conditions either. The Connecticut courts said this. The town of Monroe lost on the merits. I think that they acted unlawfully, and maybe the zoning board is totally incompetent and doesn't understand what the rules are, but the question is whether it's conscious shocking. So you're saying they could have brought an enforcement action rather than deny the permit or put conditions on the permit, and the fact that instead of bringing the enforcement action, they put conditions on the permit, that's so unlawful as to shock the conscience. Well, what it did was, yes, it was — the reasons that they gave, not only were they not legal, Your Honor, but they're based upon factually unfounded assertions regarding what was going on at the property. The Hanson One Trial Court had a trial, had a site visit, went to the site to determine whether or not what the town is saying is true about there not being adequate work at the property, ruled that the town was not credible, ruled in favor of the property owner. And yet this resistance by the town of Monroe to actually allowing the property owners to use their property, which they had every legal right to do, continued and continued. And it wasn't just the conditions and the retroactive factors. I think that's helpful. Thank you very much, Mr. Tavis. You reserve time for rebuttals, so we'll hear from you again, but let's hear from the town. Mr. Zellner. Good afternoon. May it please the Court. Attorney Jonathan Zellner representing the defendants' appellees in the incident matter. I wanted to just initially point out for the Court, and we've argued this in our brief, that one of the bases for the motion for the granting of summary judgment for the defendants was, at least for the individual defendants, was claustrophobia. The plaintiffs did not take exception to that decision in their brief. In fact, their opening brief makes no mention of that whatsoever. And their reply brief, I believe, gives at most a page reference to that. We would submit that because that basis was not challenged on summary judgment, that it's effectively been abandoned, and summary judgment can be affirmed for the individual defendants on that basis. With respect to the denial of the permit extension in April 2008, and Judge Walker had brought this up earlier, we submit that the continuing violation doctrine would not apply here. The doctrine does not apply to discrete and independent acts, which could separately hold. It can be a discrete and independent act, but what about the point that I made earlier, which is, you know, just a denial of a permit wouldn't necessarily make it seem like they were dead set on preventing the use of the property. And that wasn't clear until after remand from the Connecticut Superior Court, the town tried to really prevent that decision from taking effect by putting all of its conditions on the renewal of their order to provide and by backdating it. Doesn't that just cast the earlier denial of the permit in a different light? Well, Your Honor, the plaintiffs make much ado about the timing of the denial of the special exception permit and the filing of their affordable housing application, which they had filed a couple of months before the special exception permit was denied. So, you know, frankly, I think, and the plaintiffs claim that as soon as they filed the affordable housing application, that's when this allegedly unconstitutional conduct occurred. So I would submit that the plaintiffs were well aware that that would be a separate independent basis for their due process claim. And, frankly, they sought recourse by appealing that determination. Well, anyway, you don't dispute that they do. It's not time hard to seek relief for the activity of the town on remand. So even if that made the special permit exception look more serious or more nefarious, they still can get relief for the activity after the remand. That's correct, Your Honor. That wouldn't be time hard. Now, with respect to the conduct after the remand, as the Court is aware, the Superior Court in the initial appeal did sustain the appeal and found that the town had to grant the special exception permit. It went no further than that. It said nothing about there being any prohibition on adding any conditions or modifying or enhancing any conditions to the original special exception permit. And the plaintiffs have taken issue with the additional or with the addition of these conditions that were imposed when the commission met in 2011. I mean, come on. The Connecticut Superior Court didn't put conditions, but you think a reasonable person would have thought, oh, the Connecticut Superior Court has just ordered us to grant this permit that we have been denying, but it's totally possible for us to backdate it so that a five-year permit will only last for two years. Well, Your Honor, I — with respect to that, the — I mean, if you were a lawyer advising the town, would you say that that's a reasonable way to implement the mandate of the Connecticut Superior Court? Well, I think in this case, Your Honor, the advice that was given was that if you do that, if you retroactively backdate this, you're going to have to grant them an extension if they need another one. And they were well aware of that. The Court observed that in its memorandum of decision on the motion for signature. But they have to give another one after the two years anyway. What was the point of backdating it? Well — Despite? No, Your Honor. As was explained in the record and as shown in the record in support of the motion for summary judgment, the commission wanted to encourage the timely and efficient completion of this project because the plaintiffs had applied for permission to pursue this in 2003. By the time they sought an extension of the permit five years later, there was not even, I believe, 50 percent of the work completed just with respect to preparing the site for construction. And was the theory by which backdating it would have sped up development if, in fact, you're saying the town realized they would have to grant another extension anyway? Again, Your Honor, in that case, just making the plaintiffs more mindful, more efficient about they need to just get their act together with — Was it possible that they wouldn't grant a further extension if there was no building being done in the two years that they had required that they had specified? Or was it just — did they have a clear entitlement to further extensions? Well, you know, Your Honor, on the issue of clear entitlement, you know, and I don't believe the ruling in the initial appeal is dispositive of the issue of whether or not there was a clear entitlement to this permit. I mean, there's different standards on a zoning appeal compared to whether or not somebody has a clear entitlement to a building permit for due process purposes. And I believe the plaintiffs, I think, correctly attempted to conflate the two just because — because there was a clear entitlement under Connecticut law, right? And zoning regulations use the word may, right? So there's no entitlement to a permit or even to an extension of a permit in this situation. Exactly, Your Honor. Well, there's no entitlement in that sense, but the Connecticut Superior Court said unless there's been a change in law or regulation, you must issue the permit. So there is a way that it might — they would not have discretion to — there is a way in which the zoning board could have denied the extension, but it just doesn't apply here because there hasn't been a change in law, right? Yeah. So these parties were entitled to the extension, and the Connecticut courts told us that. Yes. Well, and, Your Honor, the court relied on, I believe, what's termed the materially changed circumstances rule. But as Judge Schotteny observed, you know, it's not apparent from that rule whether or not it would apply to special exception permits. It was the case that was cited in which it was discussed dealt with variances. It didn't deal with special exception permits. And, frankly, it didn't define what exactly constitutes a material change in circumstances. So it's — I mean, frankly, it leaves — Doesn't the Connecticut Superior Court make clear that the change at least has to be a change in law or regulation, right? It's not the performance of the — of the permittee on the property. I believe the court identified it either as an intervening change of law or just the physical conditions of the property, but it didn't elaborate further on that, Your Honor. And in terms of physical conditions, one could look at the property in 2008 and say, well, by this point, the construction — the site work was supposed to have been completed, the building was supposed to have been constructed because the original permit only had one year to complete the site work and one year to construct the building. And, again — Is that the argument the town made and that the Connecticut courts rejected? They said that you can't decide that you don't want them to continue the use that they were permitted to do originally unless there's been a change in the law. Or, I mean, I guess I read the material conditions of the property as being some kind of, you know, change in the landscape that would have led you not to grant the permit at the beginning, right? But if they were entitled to the permit for this use at the beginning, you have to grant the extension. Isn't that what the Connecticut court said? Well, yes, Your Honor, ultimately the court — you know, the court rejected the town's argument. To get off this idea about the entitlement to the permit, I guess we have to decide whether it's arbitrary and capricious or outrageously arbitrary and capricious. And I guess why couldn't a reasonable juror say, well, look, on remand, they're trying to frustrate — they're trying to avoid doing what they're required to do under the law. They don't really want to issue the permit. So they put in all of these conditions that are unlawful. They add a bond through an executive session that was unlawful. And they backdate the permit so that after the court tells them to issue a five-year extension, they're only issuing a two-year extension. Now, I get that maybe, you know, it's not obviously outrageous. Like, maybe it's just arbitrary and not outrageously arbitrary. But why can't a reasonable juror conclude? You know, why — like, if somebody said, I find that outrageous and conscience-shocking, why wouldn't that — that juror be acting reasonably? Again, Your Honor, you know, I would submit that based on the record and, you know, based on the court's careful analysis of the voluminous records in this case, which span, I believe, over — when all was said and done, probably over a thousand pages of documents, the court concluded that was simply not the case. And it's a very high standard for whether or not something is conscious-shocking. And — Well, why? I don't know. Why don't you explain to me why? So if I'm saying, look, it's obvious to me from their conduct that they don't want to implement — that they denied the permit, a court told them they had to, and they're implementing it in a way that just totally frustrates the permittee's ability to take advantage of it. And I find that outrageous. What would you tell me about why it's not outrageous? Your Honor, ultimately, we don't want to turn our Federal courts into Uber zoning boards of appeal to evaluate each and every zoning decision that may be unsatisfactory to a particular applicant. And ultimately, at the end of the day, the substantive due process guarantee doesn't forbid governmental actions that may be deemed, you know, arbitrary or capricious or incorrect, but are for that reason correctable in State court action. And the plaintiffs had a State court remedy here, which was an appeal to the Superior Court after the — And that went back twice, right? And the reason why that had to go back again is because the first time when the court told them what to do, they didn't do it. Or they did it in a way that was designed to frustrate its purpose. Well, Your Honor, and again, that goes to the issue of the Superior Court in the first appeal did not say anything about whether or not conditions could be — or didn't put any prohibition on the ability to add any sort of conditions to this renewal. And, you know, again, the plaintiffs had available recourse, which they availed themselves of twice, both when the permit was initially denied and then subsequently when it was — But is it a rule that just because they get a remedy from the State courts, that it's ipso facto, not a violation of the due process clause? Not a per se rule, Your Honor, but again — Does it go to the question of damages? That is, the period of time in which they were denied something that was later provided by the State court? Would that go to the question of damages? Suppose the State was acting — or the board was acting in an unconscious manner, you know, then it was correct that there was a period of time in which they were presumably acting, you know, extremely outrageously or shocking the conscience, right? And then under those circumstances, there was a period of time that the other side was being deprived of its rights, which were later vindicated in a State court proceeding. Do you get some relief for that interim period? I mean, could that be a basis for your claim? In other words, I'm trying to understand exactly how the other side is — the other side's clients were impaired when they could get a remedy out of the State court. And I'm just thinking, you know, that maybe there's a period of time where you don't get — suppose you don't get relief for years, and therefore you're in limbo and you're subject to an unconscious shock in rule. I suppose you could get damages for that interim period in the event that eventually — even if you ultimately got relief, right? I believe you could, Your Honor. I will note that, you know, there was evidence that the plaintiffs were conducting some activities on the property, even when the permit extension had been denied. So was that sort of because of the lax procedures that occurred giving permits? There was some hint of that in the record here, that the commissioners were saying, you know, we haven't been very good at our job up to now, and they were trying to be tighter and run a tighter ship. That seems to be part of the flavor of this. That was an issue that came up during the hearing on the request for an extension of the special exception permit was this issue of laxity in the enforcement of the zoning regulations. And frankly, it was — the criticisms — I'm kind of coming in favor, I think, to the extent that they were trying to correct their — self-correct their mistakes in the current period. Yes, I think I would agree, Your Honor, that they were trying to be more efficient and more on top of it about enforcing the zoning regulations and the permit conditions and not just rubber-stamping applications and nothing further being done pursuant to them. I see that I — Okay. Thank you very much. Thank you. Mr. Zelder, we'll turn back to Mr. Tavis on rebuttal. Thank you, Your Honors, and may it again please the Court. I have a few quick points to make in rebuttal. Although this case does involve a large, voluminous amount of materials, the district court's evaluation of those materials is entitled to no deference. This was a disposition of a case without a trial, a summary judgment. And I think that the key places in the record to look are the State superior court decisions. First, at 116 to 118 of our appendix, Judge Owens specifically not only rules, as Your Honor pointed out, that these reasons are not legally valid reasons, but also that the narrative being put forward by the town throughout this ordeal has been false. There has not been unreasonable progress at this site. The judge went to this site and said none of the factual reasons put forward by the town, and this is in footnote 1 on page 118, have any merit either. And then at pages A134 to A137 on the remand — after the remand — they had to do excavation for all three that were planned, and so the excavation was more extensive than it was originally envisioned. You don't think that's right? No, that was a contrivance. And the plaintiffs were never given an opportunity to respond. You're saying that, in fact, the plaintiffs were only doing excavation for one building. Well, the plan was to create a recycling center, and that was what they were doing. And there was a comment made that if you drove by the property, you couldn't see any progress, but that was because they left the front of the property up for sound and protection from traffic, and they began the excavation and grading in the back of the property. And they were flattening the land so that they could build a building there. That's all they could do. It's rocky, mountainous property, and it's zoned for any use, but you need a special exception to do anything. I'm confused because I thought I read in your brief that the original permit grant required significant progress to be made on buildings within two years, and no building infrastructure was put up in two years. Well, the significant progress was to clear the site, excavate the site, grade the site. But there was a condition specifically on getting part of the building up, and that's what didn't happen at all within the first five years, and that was to the chagrin of the commission, no? Well, there was language in the initial permit that there was expectation that certain work be done within two years. However, that was not a legitimate reason to deny them an extension because, after all, what do you do when you aren't able to do what you're supposed to do within a certain amount of time? You seek an extension. Right, so your argument is not that it was nothing to the idea that the progress didn't meet a benchmark. You're just saying it didn't justify the denial of the permit. And that is what the Connecticut Superior Court said, so that's a fine thing to say. Correct. Correct. And I would also note— I mean, that's true, so then I guess. So the zoning board then says, well, we don't think that the progress is what we expected, so we're going to deny the permit. And the courts tell us you can't deny the permit. Well, if you're in this dispute where actually you're worried about the progress, I understand that it's unlawful and it was reversed by the court, but why is it conscious-shocking for the other party in this dispute to say, well, the court hasn't told us we can't put new conditions on it or require a bond and all of that, and so we're going to try to do that unless the court tells us we can't. And it told them we can't, and so then they had to respond to that later. But why is that conscious-shocking? Isn't that what you would expect in a dispute between the zoning board and a property owner, that, you know, they're going to keep trying to accomplish what they want to, but they're not going to do it in open defiance of the court order, but they're going to interpret it narrowly and try to add extra conditions? Well, the government here is the town, and they have to decide whether to permit an extension of the permit. And that's the – that government action, if they deny it, denies them of their use of their property. Now, they've put forward this potential animating concern that they're not working fast enough. But if that's immaterial to the question at play, and they certainly have provided no authority that not building fast enough is a reason that you can deny an extension. There's no authority on the other side. Well, there's no question that it's not a reason. I mean, the Connecticut courts told us it's not a valid reason. My question is about the conscious-shocking aspect to it. Well, I would argue that when this commission, which is given the color of state law, is given the power to make decisions that deprive these plaintiffs of their property, their decisions have to be based in law and facts. And as for the facts about the progress, I urge you to look at page 118 and how Judge Owens evaluated it. With that argument, I guess I have one last question, which is you also have this retaliation claim about that the actions are taken in retaliation for your client trying to seek leave from the courts. And I guess my question is, isn't it obvious that the town was dead set against allowing this to progress, regardless of whether you sought leave from the courts? How do I know that it's in retaliation for the lawsuit? Well, it's — it's — the question is whether a motivating factor in their actions was protected activity. And what we have here are plaintiffs who have engaged in a great deal of protected activity adverse to the town that the town has expressed hostility toward in a variety of fora, whether it's the affordable housing application, which the entire minutes of their application are in this record, or it's them continuing to sue the town and fight the town tooth and nail to gain their right to do what they wish to do with the property. All of that is protected activity. And it's all within very close temporal proximity to these decisions, which they have — they conceded in the appellate courts of Connecticut. Some of those actions were ultraverous, illegal, like the backdating of the extension. They conceded that in the Connecticut Supreme Court. That was illegal. So if they're taking these illegal actions one after the other, they have an explanation, which is, well, we're worried about the — they're not moving the rocks fast enough. And we have an explanation, which is in the town of Connecticut that's one of the richest with the least amounts of affordable housing, these people decided to start also developing affordable housing and fighting the town when the town says no to things. But that's the real reason. All we're saying is that a reasonable juror who looks at all of this evidence, not just the judge, but reasonable jurors who have a bit of experience in the day-to-day life of a Connecticut town and a Connecticut zoning board and how they make their decisions when they're behind closed doors illegally making their decisions, a reasonable juror could conclude that the real reason why this business was destroyed was because they went against the grain. And that is unconstitutional under the First Amendment. And that should go to a fact finder to decide. Okay.